UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

COREY LEE LAVALLEY,

                Petitioner,                Case No. 1:20-cv-129

v.                                              Honorable Janet T. Neff

S.L. BURT,

                Respondent.
_____/

**REPORT AND RECOMMENDATION**

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Corey Lee LaValley is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. On January 14, 2016, Petitioner pleaded *nolo contendere* in the Allegan County Circuit Court to three counts of second-degree murder in violation of Mich. Comp. Laws § 750.317. On February 29, 2016, pursuant to the plea agreement, the court sentenced Petitioner to prison terms of 55 years to 82 years, 7 months, for each murder, to be served concurrently.

      On February 21, 2020, Petitioner timely filed his habeas corpus petition raising three grounds for relief, as follows:

    I.      Petitioner's imprisonment was achieved without due process in violation of his V, VI, and XIV Amendment rights of U.S. Const. as a result of Michigan's unconstitutional procedure under MCR 6.104.

    II.     Petitioner was not provided with his 6th Amendment right to effective assistance of counsel when he was forced into a plea that was not knowingly/intelligently made and appellate counsel was ineffective for failing to raise issue of ineffective counsel.

    III.    Trial court erroneously denied Petitioner's motion for relief from judgment when the issues at hand are blatant miscarriages of justice that satisfy the burden of 6.508(D).

(Pet., ECF No. 1, PageID.6-9.) Respondent has filed an answer to the petition (ECF No. 4) stating that the grounds should be denied because they lack merit. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless. Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Factual allegations

Petitioner was charged with killing his girlfriend and two of her children, including his own son, by shooting them in the head with a shotgun and then setting their trailer on fire. Although no one witnessed the killings, there was no question that the victims were shot and then burned, and Petitioner later admitted he was the person who shot and killed them and then burned the trailer.

Shortly before the scheduled trial, Petitioner negotiated a plea agreement. Under the agreement, Petitioner would plead *nolo contendere*[1] to three counts of second-degree murder; in

---

[1] In Michigan, a plea of *nolo contendere* has essentially the same effect on the criminal prosecution as does a plea of guilty:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea. Claims or defenses that challenge a state's capacity or ability to prove defendant's factual guilt become irrelevant upon, and are subsumed by, a plea of *nolo contendere*. Hence, we hold that a plea of *nolo contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea of guilty. Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted).

exchange, the prosecutor would drop the first-degree murder charges, the felony firearm charges, and the arson charge. The parties and the trial court entered into a *Cobbs* agreement,[2] providing that Petitioner's sentence would be 55 years to 82 years, 7 months.

Petitioner entered his plea on January 14, 2016. (Plea Hr'g Tr., ECF No. 5-5.) Shortly after entering his plea, however, Petitioner concluded he had entered the plea out of fear caused by the ineffective assistance of his trial counsel. He moved to withdraw his plea. The trial court held a hearing on Petitioner's motion to withdraw plea on January 29, 2016. (Mot. Hr'g Tr., ECF No. 10-6.) The Court denied relief and, one month later, sentenced Petitioner as set forth above.

Petitioner, with the assistance of counsel, sought leave to appeal in the Michigan Court of Appeals, claiming that the trial court should have permitted Petitioner to withdraw his plea because he was coerced into the plea by ineffective assistance of counsel. Petitioner claimed counsel had failed to investigate and prepare Petitioner's defense. (Pet'r's Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 5-13, PageID.474.) The court of appeals denied leave "for lack of merit in the grounds presented" by order entered October 25, 2016. (Mich. Ct. App. Order, ECF No. 5-13, PageID.472.) Petitioner, again with the assistance of counsel, raised the same issues in his application for leave to appeal in the Michigan Supreme Court. That court denied leave by order entered May 2, 2017. (Mich. Order, ECF No. 5-14, PageID.876.)

Petitioner returned to the trial court, filing a motion for relief from judgment on July 6, 2018. (Pet'r's Mot. for Relief from J., ECF No. 5-12.) Petitioner raised two issues: he was

---

[2] In *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), the Michigan Supreme Court approved the practice of judicial involvement in plea/sentence bargaining. *Id*. at 211. In *Cobbs*, the supreme court authorized state trial court judges to, at the request of a party, provide a preliminary evaluation of the sentence that the judge would impose. *Id*. at 211-12. The parties may then base a plea and sentencing agreement on that number. *Id*. If the court decides to exceed that number at sentencing, the court must permit the defendant to withdraw his or her plea. *Id*.

3

arraigned in district court without counsel, and both his trial and appellate counsel rendered ineffective assistance. (*Id*., PageID.421-422, 426.) By order entered November 8, 2018, the trial court denied relief, concluding that Petitioner waived his challenge to the propriety of his arraignment when he entered his plea and that the claim lacked merit anyway. (Allegan Cnty. Cir. Ct. Op. & Order, ECF No. 5-10.) The court denied Petitioner's ineffective assistance of trial counsel claims for the same reasons it had denied Petitioner's motion to withdraw plea: Petitioner had failed to carry his burden to show that counsel's representation was professionally unreasonable. The court concluded that Petitioner's arguments regarding appellate counsel also lacked merit because they were based on appellate counsel's failure to raise the meritless arguments regarding the arraignment and ineffective assistance of trial counsel.

Petitioner sought leave to appeal the trial court's decision, first in the Michigan Court of Appeals and then the Michigan Supreme Court. He raised the same issues he raised in his motion for relief from judgment, plus an additional claim that the trial court erred when the court denied the motion for relief from judgment. (Pet'r's Second Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 5-15, PageID.991; Pet'r's Second Mich. Appl. for Leave to Appeal, ECF No. 5-16, PageID.1069.) Those courts denied leave by orders entered July 2, 2019, and February 4, 2020, respectively. (Mich. Ct. App. Order, ECF No. 5-15, PageID.981; Mich. Order, ECF No. 5-16, PageID.1067.) This petition followed.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575

5

U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Petitioner's challenge regarding the trial court's denial of his motion for relief from judgment is not cognizable on habeas review (habeas issue III)

Petitioner contends that the state court erred when it refused to grant relief on Petitioner's motion for relief from judgment because, according to Petitioner, he raised blatant miscarriages of justice claims that required relief under Michigan Court Rule 6.508(D).

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-

6

68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68. Thus, if Petitioner's contention that the trial court erred under Michigan Court Rule 6.508(D) raises only issues of state law, it cannot support habeas relief.

Petitioner argues that the state court erred in concluding that the issues he raised in his collateral motion did not amount to a miscarriage of justice entitling him to relief under Mich. Ct. R. 6.508(d). In *Cress v. Palmer*, 484 F.3d 844 (6th Cir. 2007), the Sixth Circuit Court of Appeals explained why a state court's failure to follow its own rules regarding post-conviction proceedings raises only state law issues:

> [T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002). We have clearly held that claims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (citation omitted)). A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] . . . is not in any way related to the confinement." *Id*. at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id*. at 248, 247; *see also Alley v. Bell*, 307 F.3d 380, 387 (6th Cir. 2002) ("error committed during state post-conviction proceedings can not [sic] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress*, 484 F.3d at 853. Accordingly, Petitioner attack on the trial court's application of Rule 6.508(D) is not cognizable on habeas review.

**IV.     Counsel at Petitioner's district court arraignment (habeas issue I)**

Petitioner contends that he has a right to counsel at a district court arraignment. In Petitioner's case, counsel had not been appointed at the time of the district court arraignment. The district court required Petitioner to stand mute. Plaintiff does not identify any prejudice resulting from his uncounseled arraignment, so his claim of error depends on whether he was denied counsel at a critical stage of the proceedings.

The denial of counsel during a critical stage of the proceeding amounts to a *per se* denial of the effective assistance of counsel. *See United States v. Cronic*, 466 U.S. 648 (1984). The court must reverse a criminal defendant's conviction "without any [specific] showing of prejudice [to defendant] when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 659 n.25. "In other words, when counsel is totally absent during a critical stage of the proceedings, prejudice must be presumed." *Mitchell v. Mason*, 325 F.3d 732, 740 (6th Cir. 2003). That begs the question: is a district court arraignment a "critical stage" of the criminal proceeding?

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const., amend. VI. The Sixth Amendment right to counsel does not attach until a prosecution is commenced, that is, until the initiation of adversary criminal proceedings by a formal charge, a preliminary hearing, an indictment, an information, or an arraignment. *See McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). "It is only at that time 'that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized

society, and immersed in the intricacies of substantive and procedural criminal law.'" *United States v. Gouveia*, 467 U.S. 180, 189 (1984) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)). Once the right to counsel attaches, "the Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009).

Even if the right to counsel attaches at arraignment, that does not mean that "arraignment itself is a critical stage requiring the presence of counsel." *Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 212 (2008) (citing *Michigan v. Jackson*, 475 U.S. 625, 630, n.3 (1986)). By way of example, in *Hamilton v. Alabama*, 368 U.S. 52 (1961) the Supreme Court concluded that arraignment in Alabama was a "critical stage" because if a criminal defendant failed to raise certain defenses at that stage, the defenses were waived. The *Hamilton* Court acknowledged, however, that "[a]rraignment has differing consequences in the various jurisdictions . . . ." *Id.* at n. 4. In *Lundberg v. Buchkoe*, 389 F.2d 154 (6th Cir. 1968), the Sixth Circuit concluded that arraignment in Michigan is not a critical stage of the criminal proceeding:

> In Michigan the "preliminary examination has for its limited purpose only the determination by a magistrate whether there is probable cause to bind the defendant over for trial . . . ." *People v. Zaleski*, 133 N.W.2d 175 (1965); *See People v. Podolski*, 52 N.W.2d 201, *cert. denied*, 344 U.S. 845 (1952). In light of the above principles, it cannot be said that Michigan's arraignment and preliminary examination proceedings, in and of themselves, constitute a critical stage of the proceedings. Nor were there any special circumstances in appellant's case which might suggest that the proceedings were critical; no plea or statement was in fact obtained from appellant at his arraignment and, aside from his right not to be held in custody absent probable cause, appellant neither lost nor waived any right or defense. The fact that appellant might have received some collateral benefit in the form of pretrial discovery had he not waived examination is immaterial. *See Wilson v. Harris, supra*; *United States ex rel. Cooper v. Reincke*, 333 F.2d 608 (2nd Cir.), *cert. denied*, 379 U.S. 909 (1964). Appellant's claim that his conviction is invalid because of the denial of the assistance of counsel at his arraignment proceedings is thus rejected.

9

*Id.* at 158; *see also Van v. Jones*, 475 F.3d 292 (6th Cir. 2007) (reviewing the development of "critical stage" jurisprudence and validating the *Lundberg* analysis). The Sixth Circuit has concluded that *Lundberg* so clearly declares that arraignment is not a critical stage in Michigan that reasonable minds could not differ on the issue. *See Washington v. Chapman*, No. 19-2454, 2020 WL 3256835, at *3 (6th Cir. Apr. 24, 2020); *Sweet v. Howes*, No. 16-2247, 2017 WL 2385274, at *4 (6th Cir. June 1, 2017).

Plaintiff does not identify any circumstance unique to his district court arraignment that might require a different result. It appears that Petitioner's arraignment followed the normal course. The magistrate simply read the charges, informed Petitioner of his rights, informed him of the date and time for his preliminary examination, and accepted Petitioner's request for the appointment of counsel. Petitioner does not claim that any witnesses testified, any exhibits were introduced, that he made a plea or statement, or that he lost any right or defense.

Petitioner has failed to show that the Michigan court's conclusion that Petitioner's district court arraignment did not require the presence of counsel is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on this claim.

## V. Voluntary and knowing plea (habeas issue II)

Petitioner claims that his plea was not voluntarily made—rather that it was coerced by counsel—and his plea was not knowingly made—Petitioner claims to have had no idea what his defense might be because counsel had never discussed it, or the strengths and weaknesses of the prosecutor's case, with Petitioner. A valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very

power of the State to bring the defendant into court to answer the charge brought against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970).

In order to find a guilty plea constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," in other words, not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full

11

understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).

The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court

determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

When a federal court reviews a state court's application of *Strickland* under Section 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Petitioner contends that his counsel coerced him into accepting the plea deal. The premise of Petitioner's argument is that Petitioner is innocent (Pet., ECF No. 1, PageID.20) and that,

because Petitioner lacked any memory of the events at issue in the charged crimes,[3] and counsel never discussed trial strategy, the evidence, or the strengths and weaknesses of the prosecutor's case (*id*., PageID.21), it seemed as if Petitioner had no choice as to whether or not to accept the plea deal. The same circumstances are offered to support Petitioner's claim that his plea was unknowing.

Petitioner's suggestion that he was unaware of the evidence against him is entirely disingenuous. Nine witnesses testified at Petitioner's preliminary examination. (Prelim. Exam. Tr., ECF No. 5-2.) Most of them were Petitioner's relatives. The testimony indicated that Petitioner and his girlfriend had a rocky relationship and that the girlfriend had suggested that Petitioner might not be the father of the child Petitioner believed to be his son. Petitioner moved out of the trailer he shared with his girlfriend, their son, and her daughter in Dorr, Michigan. He stayed with his half-brother in Grand Rapids, Michigan. Late on the night of March 9, 2015, or early in the morning of March 10, Petitioner pulled a shotgun from under his half-brother's bed and left Grand Rapids. That night, Petitioner's girlfriend and the two children were shot in the head with a shotgun. The trailer was set on fire. Later in the day on March 10, Petitioner told

---

[3] Petitioner's memory of the events apparently comes and goes. He was permitted to plead *nolo contendere* on January 14, 2016, instead of guilty, because he claimed to have no memory of the events. Almost immediately thereafter, however, in a letter to the trial court explaining why the court should permit the plea to be withdrawn, he explained that he actually remembered the incidents (Mot. Hr'g Tr., ECF No. 5-6, PageID.331) and that he intended to tell people at trial "what happened that night" (*id*., PageID.339). Petitioner reported that he had recovered his memories while meeting with the independent expert who had examined Petitioner for purposes of opining as to Petitioner's competency. (*Id*., PageID.339-340.) Petitioner also waffles as to whether he told his counsel he remembered the events. His claim of coercion in the motion to withdraw his plea was based on Petitioner remembering the events and counsel being aware of that (*Id*., PageID.331); his claim of coercion in his present petition is based on Petitioner not remembering the events and counsel believing that Petitioner did not know what happened (Pet., ECF No. 1, PageID.21).

several other relatives that he had shot his girlfriend and the children and then set the trailer on fire. He reported that he had thrown the shotgun in the river. Petitioner was present at his preliminary examination. He was aware of this testimony.

Petitioner claims that his counsel did not work to develop Petitioner's defense. That claim also is disingenuous. Counsel pushed for an examination of Petitioner's competency and, after that did not yield the expected results, secured an independent expert to examine Petitioner. Counsel also secured funding for an expert inspection of the trailer. Counsel actively cross-examined the witnesses at the preliminary examination. Moreover, at the hearing on Petitioner's motion to withdraw his plea, Petitioner reviewed his meetings with counsel over the course of the representation. Petitioner acknowledges that he went over the prosecutor's evidence during those meetings, including evidence showing Petitioner's cell phone activity during the relevant time period. Counsel also moved for a *Walker* hearing[4] regarding statements Petitioner made to law enforcement officers.

Petitioner's argument is self-contradictory:

> [T]he only way I can explain it is that I was pushed or coerced. Yes, at the end-did I-was I threatened? No. Was I promised anything? Absolutely not. Did I make that statement that day of my own voluntary will. Yes. But it was out of fear. It was out of fear that I couldn't even fight my case, because there was no other-no other way.

(Mot. Hr'g Tr., ECF No. 5-6, PageID.341-342.) Petitioner offers this additional cryptic explanation:

> As far as the interest of justice, it's 100%, and I believe everybody has the right to know what happened that night. And I was clearly going to-as a meeting between me and [counsel] stated, that I was-or I told him on the 13th a statement and I was

---

[4] A *Walker* hearing concerns a defendant's challenge to the admissibility of a confession. *See People v. Walker*, 132 N.W.2d 87 (Mich. 1965).

15

> planning on making a revised statement of that effect that would have clarified many different reasons, many different issues.
>
> Whether or not it would have gotten me totally innocent of all charges, I don't know. But it definitely would have resulted in at least, in my understanding-my limited understanding of the law, it would have resulted in a severely diminished sentence and if not several of the charges being dropped.

(*Id.*, PageID.343.) Petitioner suggests that counsel could have investigated witnesses who put Petitioner at the scene of the crime, but Petitioner does not identify the witnesses or how counsel's investigation could have shown the testimony to be incredible. Petitioner suggests that the police should have performed a gunshot residue test; but Petitioner does not explain how counsel, who was not appointed until days after the crime, could have accomplished anything by demanding such a test then or that the test would have favored Petitioner.

Considering the evidence against Petitioner, as revealed at the preliminary examination, the apparently corroborating cell phone records, and Petitioner's repeated confessions, counsel's advice to Petitioner to accept a plea was professionally reasonable conduct. The record supports Petitioner's fear that he had little chance of success at trial—not because counsel's representation fell short, but because the evidence against Petitioner was overwhelming. And to counter that evidence, Petitioner offers no clue as to what exculpating evidence his counsel might have found had he just investigated a little more.

The trial court reached the same conclusion:

> Everything in the record suggests that Mr. Klein was actively advocating for his client, that he was successful in some of his requests of the Court. He was denied in a motion to suppress a statement to Mr. Kimber. He was denied that motion, but he actively questioned witnesses both at the preliminary hearing and the motion hearings. It was clear from his question that Mr. Klein was well versed in the file. There is nothing to suggest that he was not prepared for trial in the statements from the Defendant today.
>
> There certainly hasn't been provided to the Court any suggestion that is substantial that ineffective assistance of counsel combined with a meritorious defense. There

>certainly hasn't been a meritorious defense provided. It's just the Defendant states that he wishes to make a statement that may mitigate some of his charges, maybe result in some of them being dismissed.
>
>Based on the overall review of the file, the review of the preliminary hearing transcript that the Court reviewed, obviously prior to the plea taking because the Court had to use that a basis for the plea in this no contest case. The Court certainly doesn't see that there is any suggestion that Mr. Klein has not provided advocacy for his client and the Court is denying the Defendant's motion.

(*Id.*, PageID.354-355.)[5] There is nothing in the state courts' determination of this issue that is contrary to, or an unreasonable application of, *Strickland*—the clearly established federal law regarding ineffective assistance of counsel. Moreover, as set forth above, the state courts' factual determinations regarding the issue are well-grounded in the record. Accordingly, Petitioner is not entitled to habeas relief on his claim that trial counsel provided ineffective assistance.

Petitioner's argument that appellate counsel rendered ineffective assistance fares no better. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689. As the Supreme Court recently has

---

[5] The Michigan Court of Appeals' rejection of Petitioner's ineffective assistance claim was "on the merits;" however, it is unexplained. In *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), the Supreme Court adopted the following helpful presumption: "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Id.* at 803. Accordingly, this Court looks to the trial court's reasoned determination of Petitioner's ineffective assistance of counsel claim to explain the appellate court's form order rejecting the same claim.

observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Petitioner complains that appellate counsel failed to raise the arraignment issue and failed to "federalize" the complaints regarding counsel's ineffectiveness in forcing the plea. The Sixth Circuit has held that "'appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). *See also Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). For the reasons set forth above, Petitioner's arguments regarding his right to counsel at arraignment and the assistance of his trial counsel lack merit. Therefore, appellate counsel could not be ineffective for failing to raise them. Moreover, Petitioner is simply wrong when he suggests that appellate counsel failed to raise the federal implications of ineffective assistance of counsel in connection with a claim that Petitioner's plea was involuntary and unknowing. Those arguments are inherently federal, whether appellate counsel cited state or federal authorities to support the claims. For all of these reasons, Petitioner is not entitled to habeas relief on his claim that appellate counsel rendered ineffective assistance.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth

Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:   December 10, 2020        /s/ Sally J. Berens
                                  Sally J. Berens
                                  United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).